JOURNAL ENTRY AND OPINION
{¶ 1} Defendant-appellant Miguel Saucedo appeals from his convictions after a jury found him guilty of two counts of aggravated robbery with firearm specifications.
 {¶ 2} Saucedo presents one assignment of error in which he argues that, having ruled that the state violated the discovery rules by withholding potentially exculpatory evidence, the trial court should have granted his motion for either a dismissal of the case or a mistrial.
 {¶ 3} Following a review of the record, this court cannot find the trial court abused its discretion in this matter. Consequently, Saucedo's assignment of error is overruled, and his convictions are affirmed.
 {¶ 4} Saucedo does not challenge the evidence presented by the state to support his guilt. The victims, Hector Gonzalez and Jessica Lillo, testified that on the night of April 16, 2007, they had seen a movie in downtown Cleveland and then taken a bus back to a location near their residence. As they were walking on West 49th Street, near the Eichorn Avenue intersection, two men, later identified as Saucedo and his co-defendant, Robert Mills, accosted them.
 {¶ 5} Gonzalez testified that Mills ordered him to remain still and grabbed him by the shirt. Instead of complying, Gonzalez resisted. Mills responded by punching Gonzalez several times in the head. *Page 3 
 {¶ 6} Saucedo, in the meantime, had taken Lillo by the arm and demanded her money. When she protested that she had none, he grabbed her purse and rummaged through it. As Saucedo did so, Lillo saw he had a gun in one hand; she called out that fact to Gonzalez.
 {¶ 7} Gonzalez at that point ceased resisting Mills and collapsed to his knees with his hands on his head. Mills took advantage of his posture by punching him again, driving Gonzalez to the pavement. Mills thereupon extracted from Gonzalez's pockets some items, including his wallet. Finding the wallet empty of cash, Mills kicked Gonzalez a few times, then he and Saucedo fled.
 {¶ 8} Gonzalez and Lillo went to a nearby convenience store, where they called the police. Officer Michael Tankersley responded a few minutes later. He spoke to them briefly, obtained descriptions of the assailants, and broadcast the information via police radio. Tankersley then requested Gonzalez and Lillo to accompany him in his zone car to the scene of the incident.
 {¶ 9} After the victims pointed out the place where they were attacked, they asked Tankersley to help them look around, in the event the attackers had discarded any of their belongings. Tankersley obliged. As he drove southbound on West 49th Street, he saw Mills and Saucedo walking on the sidewalk. Gonzalez stated, "That's them." *Page 4 
 {¶ 10} Mills and Saucedo matched the victims' descriptions of their assailants. Tankersley stopped his car, detained the two men, and waited for "backup." Upon the arrival of some additional officers, a "cold stand" was conducted.
 {¶ 11} However, the victims remained nervous from the incident, therefore, they were reluctant to make a positive identification at that time. Consequently, pending further investigation of the incident, Mills was released. Saucedo was arrested on an outstanding warrant for a misdemeanor offense.
 {¶ 12} The following day, Det. David Borden interviewed Gonzalez and Lillo. When presented with a photo array; Lillo chose Saucedo's photo as the man who had grabbed her purse while he held a gun. Similarly, Gonzalez chose Mills' photo as the man who had punched and kicked him before taking his wallet. The victims additionally provided written statements.
 {¶ 13} Saucedo subsequently was indicted together with Mills on three counts, viz., two counts of aggravated robbery, R.C. 2911.01(A)(1), and one count of kidnapping.[1] Each count carried both a one-year and a three-year firearm specification. *Page 5 
 {¶ 14} By the time the matter proceeded to a joint trial, Mills had executed a jury waiver, thus, the jury was limited to a determination of only Saucedo's guilt on the charges. The jury ultimately found him guilty on each count. Prior to sentencing Saucedo, however, the trial court granted his motion for acquittal as to the kidnapping charge. Saucedo ultimately received a sentence that totaled six years.
 {¶ 15} Saucedo challenges his convictions with one assignment of error, which states as follows:
 "I. The trial court erred by failing to grant the Defendant-Appellant's motion for a mistrial and motion to dismiss.
 "A. The Defendant's motion to dismiss for the withholding of exculpatory facts should have been granted by the trial court.
 "B. The Defendant's motion for a mistrial based upon the revelation of exculpatory facts during trial should have been granted by the trial court."
 {¶ 16} Saucedo argues that the court acted improperly in handling a matter that occurred during trial. The record reflects that at the conclusion of Gonzalez's direct examination, defense counsel requested, pursuant to Crim. R. 16(B)(1)(g), an in camera inspection of the written statement Gonzalez provided *Page 6 
to Det. Borden. At that point, defense counsel became aware that Gonzalez's statement contained a second page.
 {¶ 17} This page demonstrated that Gonzalez answered a few additional questions posed to him by Borden. Gonzalez indicated that he received a text message on his cell phone which caused him some alarm. The message asked him how he felt being in his own "space," and finished with the words "getting money." Gonzalez stated that he believed the message might relate to the incident, because his wallet contained papers that pertained to his new apartment, and he received the message approximately an hour and a half after the incident. During his direct examination, Gonzalez made no mention of this occurrence.
 {¶ 18} The trial court excused the jury in order to consider the matter. After some discussion, the court concluded that the prosecutor had not provided the second page of Gonzalez's statement to defense counsel, but that the prosecutor's omission was not willful but, rather, was inadvertent. The trial court additionally concluded that the information was exculpatory.
 {¶ 19} The record reflects defense counsel agreed with both of the trial court's conclusions. Defense counsel, however, requested the court to resolve the error by either dismissing the case against Saucedo, or granting a motion for mistrial. *Page 7 
 {¶ 20} In considering the matter, the trial court first requested Borden to account for his investigation into the source of the text message; Borden indicated the message originated from an untraceable cellular phone. The trial court then listened to extensive argument about the matter.
 {¶ 21} Eventually, the trial court declined to dismiss the charges, and denied Saucedo's motion for a mistrial. The court informed defense counsel that he could pursue the entire matter of the text message with any of the state's witnesses if he chose, including the ones who already had testified, or, alternatively, if he wanted the information to remain undisclosed, the remaining witnesses would be instructed not to mention it. Trial thereupon proceeded. Defense counsel ultimately decided to introduce the evidence, in order to show the jury that Saucedo could not have been the source of the call.
 {¶ 22} Saucedo argues that the trial court's handling of the matter constituted an abuse of its discretion. This court disagrees.
 {¶ 23} Crim. R. 16(E)(3) provides that, "[i]f at any time during the course of the proceedings it is brought to the attention of the trial court that a party has failed to comply" with the rules of discovery, "the court may * * * grant a continuance, or prohibit the party from introducing in evidence the material not disclosed, or it may make suchother order as it deems just under the circumstances." (Emphasis added.) *Page 8 
 {¶ 24} It is generally accepted that, in deciding how to resolve a discovery violation, the trial court "must impose the least severe sanction that is consistent with the purpose of the rules of discovery."Lakewood v. Papadelis (1987), 32 Ohio St.3d 1, paragraph two of the syllabus. "The overall purpose is to produce a fair trial." Id. at 3.
 {¶ 25} Crim. R. 16(E)(3) permits the trial court to use its discretion; therefore, the court will not be reversed absent an abuse of that discretion. State v. Parson (1983), 6 Ohio St.3d 442, 445. In a criminal trial in which the prosecution fails to disclose exculpatory evidence, the trial court must consider the following factors in deciding the appropriate way to ensure the fairness of the proceeding: 1) whether the prosecution's failure to disclose was a willful violation of Crim. R. 16; 2) whether foreknowledge of the evidence would have benefitted the accused in the preparation of his defense; and, 3) whether the accused is prejudiced by admission of the evidence. Id. at the syllabus.
 {¶ 26} In this case, the trial court applied the factors set forth inParson. The court determined the prosecution's failure to disclose was inadvertent. The record reflects defense counsel conceded this point.State v. Cossin, Athens App. No. 07CA27, 2008-Ohio-1827, ¶ 21; cf.,State v. Larkins, 127 Ohio App.3d 626, 2006-Ohio-90, ¶ 43. *Page 9 
 {¶ 27} The trial court also determined that the evidence concerning the text message was exculpatory as related to sending a text message and thus may have benefitted the defense. Defense counsel agreed with this assessment as well. In fact, since the trial court ruled that the defense could use the information as it saw fit, Saucedo's attorney introduced the matter in order to establish that his client, who was under arrest at the time, could not have sent the message. Thus, the jury became aware of that fact, and the evidence was used effectively on Saucedo's behalf. State v. Collins, Cuyahoga App. No. 89668,2008-Ohio-2363, ¶ 38.
 {¶ 28} The foregoing answers the third prong of the Parsons test: despite the prosecution's failure to comply with its duty to disclose, since the evidence was presented to the jury, Saucedo suffered no prejudice. The jury simply remained unpersuaded that the text message to Gonzalez, sent after the incident, negated the overwhelming evidence proving Saucedo committed the crimes. State v. Gibson, Allen App. No. 1-06-74, 2007-Ohio-3345.
 {¶ 29} Since the record fails to reflect the trial court abused its discretion in crafting a remedy for the discovery violation, the trial court did not err in denying Saucedo's motions for dismissal of the charges or for a mistrial.
 {¶ 30} Saucedo's assignment of error, accordingly, is overruled.
 Affirmed. *Page 10 
It is ordered that appellee recover from appellant costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's convictions having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
COLLEEN CONWAY COONEY, P.J., and ANTHONY O. CALABRESE, JR., J., CONCUR
[1] Pursuant to State v. Wharf, 86 Ohio St.3d 375, 1999-Ohio-112, paragraph two of the syllabus, to establish a violation of this section of the aggravated robbery statute, "it is not necessary to prove a specific mental state regarding the deadly weapon element of the offense * * *." Consequently, the supreme court's recent decision inState v. Colon, 118 Ohio St.3d 26, 2008-Ohio-1624, does not apply to the indictment in the instant case. *Page 1