JOURNAL ENTRY AND OPINION
{¶ 1} Defendant-appellant Demetrius Wade appeals from his conviction on a single count of aggravated robbery. Wade sets forth four assignments of error which challenge the sufficiency of the indictment, the court's refusal to allow him new trial counsel, the admission of victim impact testimony, and counsel's failure to raise certain objections. We find no error and affirm.
 {¶ 2} Wade does not challenge either the weight or the sufficiency of the evidence, so we give an abridged statement of the facts. The victim testified that he had stopped for a drink after work and was sitting in his truck when Wade and another man approached the victim at gunpoint, ordered him out of his truck, and robbed him. Wade held the gun to the victim's head and said that he should shoot, but the victim successfully pleaded for his life. Wade and the accomplice took the victim's keys, told him to leave, and started to drive away in the victim's truck. The victim quickly encountered a passing police car and told the officers that he had been car-jacked. The officers moved rapidly and blocked the path of the victim's truck, forcing Wade and his accomplice to flee on foot. The officers chased Wade after noticing that he carried a gun. As he fled, Wade threw his gun beneath a parked vehicle. After apprehending Wade, the officers located the gun that Wade had thrown under the parked vehicle. The police found Wade's accomplice hiding in a different truck, and recovered the victim's wallet from the wheel well of that same truck. *Page 2 
 I {¶ 3} Wade's first assignment of error is based on the supreme court's recent decision in State v. Colon, 118 Ohio St.3d 26, 2008-Ohio-1624, and complains that the indictment charging him with aggravated robbery failed to specify a mental element for the theft element of aggravated robbery. Although Wade did not object to any defect in the indictment, he maintains that the defect amounts to structural error and requires automatic reversal of his conviction.
 {¶ 4} Colon held that an indictment for robbery in violation of R.C. 2911.02(A)(2) omitted an essential element of the crime by failing to charge the "recklessly" mens rea element associated with inflicting, attempting to inflict, or threatening to inflict physical harm in the course of a theft offense. The supreme court stated that the omission of the reckless mental element from the indictment meant that the state failed to charge an offense, and that failure constituted structural error which required reversal. Id. at syllabus.
 {¶ 5} In the present case, the state charged Wade with aggravated robbery under R.C. 2911.01(A)(1). That section states:
 {¶ 6} "(A) No person, in attempting or committing a theft offense, as defined in section 2913.01 of the Revised Code, or in fleeing immediately after the attempt or offense, shall do any of the following: (1) Have a deadly weapon on or about the offender's person or under the offender's control and either *Page 3 
display the weapon, brandish it, indicate that the offender possesses it, or use it[.]"
 {¶ 7} Unlike robbery as charged in Colon, the omission of a culpable mental element in R.C. 2911.01(A)(1) does not default to reckless because the supreme court has held that "it is not necessary to prove a specific mental state regarding the deadly weapon element of the offense of robbery." See State v. Wharf, 86 Ohio St.3d 375, 1999-Ohio-112, paragraph two of the syllabus. The appellate courts have thus far appeared to reject Colons application to cases of aggravated robbery charged under R.C. 2911.01(A)(1). See State v. Peterson, Cuyahoga App. No. 90263, 2008-Ohio-4239, ¶ 13-15; State v. Saucedo, Cuyahoga App. No. 90327, 2008-Ohio-3544, fn. 1; State v. Ferguson, Franklin App. No. 07AP-640, 2008-Ohio-3827; but, see, State v. Lester, Hamilton App. No. C-070383, 2008-Ohio-3570, ¶ 23 (reversing aggravated robbery conviction under R.C. 2911.01(A)(1) because "the indictment charging Lester with aggravated robbery omitted the mens rea element for the offense."). Consistent with that precedent, we conclude that aggravated robbery under R.C. 2911.01(A)(1) is a strict liability offense, and that the state did not err by failing to charge a mental element.[1] *Page 4 
[EDITORS' NOTE: THIS PAGE CONTAINED FOOTNOTES.] *Page 5 
 II {¶ 8} Wade next argues that the court deprived him of his right to the effective assistance of counsel by denying without adequate inquiry his request to remove his trial attorney.
 A {¶ 9} Although Wade frames this assignment of error in terms of ineffective assistance of counsel, it is clear from the record that he was requesting that the court replace his court-appointed attorney with new trial counsel because of differences in handling plea negotiations. Just before the start of jury voir dire, Wade told the court that "I had wanted to say that I don't feel my attorney is representing me right. And I asked him, can I dismiss him. He say I can't, I can't dismiss my lawyer, and get a new one." Wade told the court that counsel had "told me that I was going to be able to cop out to some time," but no plea bargain had been reached between the defense and the state.
 {¶ 10} "`An indigent defendant has no right to have a particular attorney represent him and therefore must demonstrate "good cause" to warrant substitution of counsel.'" State v. Cowans, 87 Ohio St.3d 68,72, 1999-Ohio-250, quoting United States v. Iles (C.A.6, 1990),906 F.2d 1122, 1130. "Good cause" in these circumstances is a showing that there has been a breakdown in the attorney-client relationship of such magnitude as to jeopardize Wade's Sixth Amendment right to effective assistance of counsel. State v. Coleman (1988), *Page 6 37 Ohio St.3d 286, 292. Mere hostility, tension, and personal conflicts between attorney and client do not constitute a total breakdown in communication if those problems do not interfere with the preparation and presentation of a defense. State v. Gordon, 149 Ohio App.3d 237,241, 2002-Ohio-2761. "Defendants have no constitutional right to determine strategy, and decisions about viable defenses are `within the exclusive province of defense counsel to make after consultation with his client.'" State v. Murphy, 91 Ohio St.3d 516, 524, 2001-Ohio-112, quoting Lewis v. Alexander (C.A.6, 1993), 11 F.3d 1349, 1354. The decision whether to substitute new counsel for appointed counsel is vested within the sound discretion of the trial judge. Id. at 532.
 B {¶ 11} The court did not abuse its discretion by denying Wade's request for new counsel because Wade failed to establish any facts that would show a breakdown in the attorney-client relationship that jeopardized his right to the effective assistance of counsel. Wade made an oral request for substitution of counsel, but could articulate no basis for the request other than that "I don't feel my attorney is representing me right." This conclusory statement gave the court no reason to believe that the attorney-client relationship had been jeopardized.
 {¶ 12} We likewise find no merit in Wade's argument that the court's dismissive attitude toward his request for substitution of counsel prevented him *Page 7 
from giving a more substantive basis for that request. Although not entirely clear from the transcript, it appears that Wade thought that counsel had not worked hard enough to secure a plea deal with the state. When he tried to tell the court about his plea, the court told him that plea deals were "between the parties, not me." As Wade continued to describe how counsel told him that "the cop out was four years[,]" the court responded "I'm not going to go into the particulars of the plea bargain." When Wade said, "[c]an I explain what I was — [,]" the court stated, "No, I'm not interested in the plea bargain."
 {¶ 13} The court's reticence at becoming involved in the plea discussions may have been prompted by a concern that its participation might have been viewed as coercive given Wade's request for new counsel. See State v. Byrd (1980), 63 Ohio St.2d 288, 292 ("A judge's participation in the actual bargaining process presents a high potential for coercion."). The court may also have wished to avoid binding itself to any prison term before hearing the particulars of the case and Wade's criminal history. See, e.g., State v. Triplett (Feb. 13, 1997), Cuyahoga App. No. 69237; State v. Bonnell, Clermont App. No. CA2001-12-094, 2002-Ohio-5882, ¶ 18. The court had significant justification for not wishing to engage in discussions about Wade's plea. More importantly, Wade did not offer any basis for finding that his dissatisfaction with the absence *Page 8 
of a plea agreement had anything to do with counsel's performance in a way that would implicate his right to the effective assistance of counsel.
 C {¶ 14} Wade also complains that the court abused its discretion by denying his second request for the substitution of counsel, made after the jury had been empaneled and just prior to opening statements. Trial counsel handed the court a motion prepared by Wade, but not filed with the clerk of the court. The court told Wade that trial had commenced (the jury had been empaneled) and that it would not stop the trial, particularly since Wade had waited until the last moment to seek the substitution of counsel. The court informed Wade that he could either continue with assigned counsel or represent himself. In the course of questioning Wade, the court asked him to give an explanation of why he thought he had the right to a new attorney. Wade replied, "[b]ecause I don't feel my attorney is representing me right."
 {¶ 15} Again, the court did not abuse its discretion by denying Wade's second request for substitution of counsel. Although the motion prepared by Wade and presented to the court by trial counsel is not a part of the record on appeal, the court stated on the record that the document was a form motion for disqualifying a trial judge and not for substitution of counsel. The court also noted that Wade had been in jail awaiting trial for nearly 90 days and could *Page 9 
have filed a motion to disqualify counsel at any time prior to trial. These two facts led the court to conclude that Wade had been seeking to do nothing more than delay the proceedings. We have no basis for finding that the court abused its discretion by reaching this conclusion. On both occasions on which he sought substitution of counsel, Wade could offer no more compelling reason for substitution than that his counsel was not representing him "right." At best, these statements showed that Wade simply disagreed with counsel's trial strategy. That disagreement is not a basis for substitution of counsel. These circumstances show that the court gave Wade's motion adequate consideration.
 III {¶ 16} For his third assignment of error, Wade argues that the court erred by allowing the victim to testify to the impact the crime had on him, in violation of the rule against the admission of victim impact evidence.
 {¶ 17} Questions involving victim impact testimony center on issues of relevancy. Ordinarily, any evidence having "the tendency to make the existence of any fact that is of consequence to the determination of the action more probable than it would be without the evidence" is admissible. See Evid. R. 401. However, testimony as to how a defendant's criminal acts have affected the victims are usually irrelevant because they do not ordinarily purport to go to the guilt or innocence of the accused. Rather than proving any fact of consequence *Page 10 
on the issue of guilt, victim impact testimony tends to inflame the passions of the jury and risk conviction on facts unrelated to actual guilt. See State v. White (1968), 15 Ohio St.2d 146. There are occasions, however, when the state is not wholly precluded from eliciting testimony from victims that touch on the impact the crime had on the victims. "Circumstances of the victims are relevant to the crime as a whole. The victims cannot be separated from the crime." Statev. Eads, Cuyahoga App. No. 87636, 2007-Ohio-539, citing State v.Williams, 99 Ohio St.3d 439, 2003-Ohio-4164.
 {¶ 18} The victim testified that when Wade and his accomplice approached him from behind, the victim told them to "to get in front of me" because "I lost my brother like that, someone did him like that, came up and killed him from behind." The victim also told the jury that "[m]y life is totally different now[,]" that he used to stop for a drink after work, but that he stopped that practice because "I wouldn't have never been there if I went home, I never would have been robbed. That's how I feel. I haven't been back drinking since."
 {¶ 19} Wade did not object to any of these statements, so we review them only for plain error. Crim. R. 52(B) states that plain errors or defects which affect substantial rights may be grounds for reversal even though they were not brought to the attention of the trial court. Notice of plain error, however, applies only under exceptional circumstances to prevent a manifest miscarriage of *Page 11 
justice. State v. Long (1978), 53 Ohio St.2d 91, paragraph three of the syllabus. Plain error does not exist unless it can be said that but for the error, the outcome of the trial would have clearly been otherwise.State v. Moreland (1990), 50 Ohio St.3d 58, 62.
 {¶ 20} Assuming without deciding that the quoted portions of the victim's testimony were erroneously admitted victim impact evidence, we find that the admission of this evidence did not rise to a level of plain error. In this appeal, Wade raises no challenge to either the weight or the sufficiency of the evidence. Indeed, the evidence at trial weighed heavily against him. The victim positively identified Wade as one of the persons who robbed him at gunpoint, Wade and his accomplice were seen driving the victim's truck, and the police recovered the gun that Wade discarded as the police chased him. The recovery of the victim's wallet from the wheel well of the vehicle where the accomplice hid from the police gave final proof of the robbery. In all respects, the state's evidence was consistent and compelling. The outcome of the trial would not have been clearly otherwise had the offending testimony not been offered into evidence.
 IV {¶ 21} Wade's fourth assignment of error maintains that counsel's failure to challenge defects in the indictment as argued in the first assignment of error and counsel's failure to object to victim impact evidence as argued in the third *Page 12 
assignment of error constituted ineffective assistance of counsel. Our disposition of those assignments of error in favor of the state shows that Wade has failed to establish any prejudice from counsel's performance. See State v. Bradley (1989), 42 Ohio St.3d 136, 141-142. We, therefore, summarily overrule this assignment of error.
Judgment affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Cuyahoga County Court of Common Pleas to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence. *Page 13 
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
MELODY J. STEWART, JUDGE
KENNETH A. ROCCO, P.J., and
FRANK D. CELEBREZZE, JR., J., CONCUR
[1] On reconsideration of Colon, the supreme court emphasized that "the syllabus in Colon I is confined to the facts in that case."State v. Colon, 2008-Ohio-3749, ¶ 8 ("Colon II"). Importantly, the supreme court noted that it rested its structural error analysis on those facts showing that the defective indictment spawned multiple trial errors, including the court's failure to instruct the jury on the underlying theft offense. In the present case, the court instructed Wade's jury on all the elements of theft, so even if there had been a defect in the indictment, it did not result in the kind of trial errors that required reversal in Colon I. *Page 1